UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:

Johnson D. Koola,

              Debtor(s).

C/A No. 18-01373-jw

Chapter 13

**BRIEF**

Ditech Financial LLC f/k/a Green Tree Servicing, LLC (hereinafter "Ditech"), by and through its undersigned attorney, hereby submit this supplemental brief in response to the Court's request for supplemental briefing on the issue of which version of the South Carolina Commercial Code should be applied in this matter.

**Facts and Procedural History**

On February 20, 2004, Debtor Johnson Koola executed a promissory note and mortgage in connection with his purchase of the property located at 1587 Cambridge Lakes Drive, Mount Pleasant, South Carolina 29464. Under the terms of the Note, Mr. Koola promised to pay monthly installments due on the first of every month. Mr. Koola ultimately defaulted on his obligations and a foreclosure action was filed in the Court of Common Pleas for the County of Charleston on July 27, 2010. According to the allegations of the foreclosure complaint, the loan was contractually due for the November 1, 2009 installment at the time the foreclosure complaint

was filed by BAC Home Loans Servicing, LLC.[1]  Mr. Koola filed an Answer and Counterclaim. After receiving adverse rulings, Debtor engaged in a course of appeals through the state court system.  Debtor then removed the action to United States District Court and engaged in a course of appeals through the federal system, ending ultimately with a petition for certoriari to the United States Supreme Court, which was denied.  Debtor filed the present Chapter 13 petition on March 20, 2018.  Debtor filed an objection to Ditech Financial LLC's proof of claim and a hearing was held on June 21, 2018.  Debtor then filed a Motion on July 13, 2018 and the court held a preliminary status hearing on July 24, 2018.  Following the Preliminary Status Hearing, the Court ordered the parties to submit briefs on the issue of whether §36-3-309 (hereinafter "Revised Article 3") or §36-3-804 (hereinafter "Former Article 3") applies to the instant proceedings.

## Discussion

The issue presented appears to be a novel one under South Carolina law.

**I.    Revised Article 3 to South Carolina Commercial Code Applies in this Matter**

The South Carolina General Assembly adopted the modified Uniform Commercial Code effective July 1, 2008.  At the Preliminary Hearing, the Court noted the enacting provisions:

> This act applies to a transaction occurring on or after the effective date [July 1, 2008] of this act.  This act does not apply to a transaction or event, or obligation or duty arising out of or associated with a transaction or event, before the effective date of this act.

> A transaction occurring before the effective date [July 1, 2008] of this act and the obligations, and interests flowing from that transaction are governed by any statute or other law amended or repealed by this act as if repeal or amendment had not occurred

---

[1] Bank of America, N.A. was substituted as plaintiff in the state court foreclosure action following its merger with BAC Home Loans Servicing, LLC.  Ditech Financial LLC f/k/a Green Tree Servicing, LLC began servicing Mr. Koola's loan in May 2013.

> and may be terminated, completed, consummated, or enforced under that statute or other law.

2008 Act No. 204, § 4.A and B. Based on statutory construction and recent case law, this Court should find that Revised Article 3 applies to this transaction.

### A.  Statutory Construction

Turning first to the enacting provision itself, neither the term "transaction" or "event" is defined under the South Carolina Commercial Code. Interestingly, Revised Article 3 supplied a definition for a "consumer transaction," which is defined as a "transaction in which an individual incurs an obligation primarily for personal, family, or household purposes." S.C. Code Ann. § 36-3-103. There can be no real dispute that Mr. Koola's loan is a consumer transaction. Based on cardinal principals of statutory construction, the term "transaction" necessarily has a broader definition that that of "consumer transaction" since the legislature purposefully chose to define the latter but not the former. *Zauderer Assocs. V. C&J Indus.*, 378 F. Supp. 2d 682, 688 (D.S.C. 2005 ) (noting that cardinal rule requires that words used in a statute that are not defined be given their "plain and ordinary meaning" and noting that appellate courts have "looked to the usual dictionary meaning to supply its meaning."). As such, the Court should not limit its focus solely on the date Mr. Koola executed the underlying note and mortgage.

While there is a presumption that an amended statute is intended to apply prospectively, the South Carolina Supreme Court "has consistently approved retroactive application of statutes which provide procedural or remedial benefits as opposed to statutes affecting vested or substantial rights." *Goff v. Mills*, 279 S.C. 382, 386, 308 S.E.2d 778, 780 (1983). An important consideration is whether or not the amended statute creates a new remedy. *Hyder v. Jones*, 271 S.C. 85, 89, 245 S.E.2d 123, 125 (1978) (holding that statute could not be applied retroactively "where before the statute there was no remedy whatever.").

In the present case, there already existed a remedy for the enforcement of a lost instrument at the time Revised Article 3 was adopted.  Importantly, the South Carolina's Reporter Comment states that 36-3-309 "is a modification of former Section 36-3-804."  S.C. Code Ann. § 36-3-309 South Carolina Reporter's Comment (Supp. 2017).  The South Carolina Legislature purposely stated § 309 was a "modification" as opposed to a wholesale change in the law of the enforcement of lost instruments creating new, substantive rights.  Based on *Goff* and *Hyder* and the South Carolina Reporter Comment, this Court should hold that the Revised Article 3 as it relates to the enforcement of lost instruments is "procedural or remedial" and can be applied retroactively.

### B. Recent South Carolina Court of Appeals Decisions

While no South Carolina court has squarely addressed this issue, several have acknowledged Revised Article 3 and have cited to the revised version time and time again.[2]  For example, in *Bank of America v. Draper*, the Court of Appeals was faced with the issue of the enforceability of a note executed in 2005.  The underlying foreclosure action was filed in 2010. *Bank of Am., N.A. v. Draper*, 405 S.C. 214, 217, 746 S.E.2d 478, 479 (Ct. App. 2013).    The Court of Appeals cited to Revised Article 3 for the significant issue of determining whether or not the plaintiff was entitled to enforce the note.  *Id*. at 223, 746 S.E.2d at 482.  Moreover, in *Wilmington Savings Fund Society v. Furmanchik*, 2015 S.C. App. Unpub. LEXIS 440, the Court of Appeals applied Revised Article 3 to the facts of the case – the underlying note was executed in 2006 and the foreclosure action was filed in 2010 - and specifically cited a key change in Revised Article 3 regarding indorsements in reaching its decision.  *Wilmington Sav. Fund Soc'y v. Furmanchik*, No. 2015-UP-353, 2015 S.C. App. Unpub. LEXIS 440, at *4 (Ct. App. July 15,

---

[2] *But see Kain v. Bank of New York Mellon, f/k/a Bank of New York as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2005-16 (In re Kain)*, C/A No. 08-08404-hb, Adv. Pro. No. 10-80047, slip op. (Bankr. D.S.C. Mar. 30, 2012).  In *Kain*, the parties agreed that the Former Article 3 applied to the case.

2015) (unpublished). *See also Bentrim v. Wells Fargo Bank, N.A.*, 2017 S.C. App. Unpub. Lexis 372, *4 (Ct. App. 2012) (unpublished) (applying revised Section 36-3-301 to dispute involving enforceability of the note executed in 2002 and underlying suit filed in 2011). The Tennessee Court of Appeals had the opportunity to apply S.C. Code Ann. § 36-3-309 in *Dickerson v. Regions Bank*, 2014 Tenn. App. Lexis 156 (2014). The note at issue was executed in 1997 and was controlled by South Carolina law. In 2009, the lender filed a judicial foreclosure action. While the issue does not appear to have been raised by the parties, the Tennessee Court of Appeals applied § 36-3-309, as opposed to § 36-3-804, in reaching its decision. The Court of Appeals of Texas addressed a similar situation in *Briscoe v. Goodmark Corp*. The Texas Court of Appeals applied the former version of the applicable last note statute because suit was commenced before the amendment, and the rights had accrued before the amendment because the note was due before the amended statute was enacted. *Briscoe v. Goodmark Corp.*, 130 S.W.3d 160, 164 (Tex. App. 2003). The above-referenced cases all stand for the proposition that the statute in effect at the time the lawsuit was commenced should be applied.

In the present case, Mr. Koola admits that there is a first mortgage lien against the subject property and he is in default under the terms of the Note and Mortgage. His schedules list the Property as being subject to a lien held by Bank of America, N.A. He did not state that the lien was disputed in his schedules. His schedules did provide that "there are questions who is the real party in interest and whether statute of limitations bars any claims made by plaintiff." Ditech submits that Mr. Koola's default – the "event" – led to the filing of the underlying foreclosure action, which occurred in November 2009. It cannot be ignored that Mr. Koola has previously represented that he is seeking a ruling that may be applicable to the underlying foreclosure action. As the Court of Appeals has implicitly found that Revised Article 3 should be applied

based on the date the underlying enforcement action was filed, this Court should find that Revised Article 3 applies to the instant matter.

## II.    Applicability of Former Article 3

S.C. Code Ann. § 36-3-804 provided:

The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court may require security indemnifying the defendant against loss by reason of further claims on the instrument.

S.C. Code Ann. § 36-3-804 (2003).

Article 3 provides that the "act shall be liberally construed and applied to promote its underlying purposes and policies." S.C. Code. Ann. § 36-1-102 (2003). The legislative intent is for the courts to "apply the statutory language in such a way as to not impair the needed flexibility in commercial practice." *Id.*; South Carolina Reporter's Comment. S.C. Code Ann. § 36-3-804 was entitled "Lost, destroyed or stolen instruments" and was enacted in 1962. The purpose of § 36-3-804 was "to provide a statutory method whereby an owner of a lost negotiable instrument may recover against the party liable thereon." S.C. Code Ann. § 36-3-804, South Carolina Reporter's Comments. It remained unchanged until the enactment of Revised Article 3. The law of "principal and agent" supplements Article 3. S.C. Code Ann. § 36-1-103. Finally, "the effect of provisions of [the Uniform Commercial Code] may be varied by agreement." S.C. Code Ann. § 36-1-102(3) (2003).

The term "owner" is not defined in Article 3. Ownership is an Article 9 concept as that article governs the sale of negotiable and non-negotiable notes. Permanent Editorial Board for UCC, Application of the Uniform Commercial Code to Selected Issued Related to Mortgage Notes (2011) (UCC Report on Mortgage Notes),

www.uniformlaws.org/shared/committees_materials/PEBUCC/PEB_Report_111411.pdf.

Generally speaking, the "owner of the note has the right to the economic benefits of the note." *Brown v. Dep't of Commerce*, 184 Wash. 2d 509, 524, 359 P.3d 771, 778 (2015). At the time of the initial hearing on the Objection to Claim and at the Preliminary Status Hearing, Fannie Mae was the owner of the note.[3] The prior servicer, Bank of America, N.A., and the current servicer, Ditech Financial LLC's, relationship with Fannie Mae was governed by the Fannie Mae Servicing Guide. It is easily accessible at www.fanniemae.com/content/guide/servicing.

    Given that the term "owner" is not defined in Article, and coupled with the fact that the original version of the Lost Instrument Statute was enacted in 1962, this Court should allow for agency principals to supplement its interpretation. This would be in harmony with the legislative intent for the "needed flexibility" in commercial transactions, which undoubtedly changed in the 46 year period between the original enactment of §804 and the enactment of Revised Article 3. As such, Ditech, as the servicing agent for the owner, would have qualified under the §804 to enforce the now lost instrument. *See In re Neals*, 459 B.R. 612 (Bankr. D.S.C. 2011) (holding that a servicer had standing and was real party in interest in deciding motion for relief from stay); *CWCapital Asset Mgmt., LLC v. Chi. Props., LLC*, 610 F.3d 497, 500-01 (7th Cir. 2010) ("The servicer is much like an assignee for collection, who must render to the assignor the money collected by the assignee's suit on his behalf (minus the assignee's fee) but can sue in his own name  without violating Rule 17(a).").

---

[3] That fact has since changed as Fannie Mae sold Mr. Koola's loan as part of a larger transaction on July 25, 2018. The undersigned has not been retained by the new owner of the note. In addition, the undersigned would cite to *In re Benyamin*, No. 17-12677 (MG), 2018 Bankr. LEXIS 1988 and 11 U.S.C. §521(j) to preserve any rights that the new owner may have to present additional arguments and file supporting documents in this case.

**Conclusion**

For the foregoing reasons, this Court should hold that Revised Article 3 applies to the instant matter based on either the date of Mr. Koola's default or the date the underlying foreclosure action was filed. Should the Court hold otherwise, the undersigned respectfully requests that the Court hold any determinative ruling be held in abeyance until the new owner has an opportunity to appear in this case to defend their newly acquired rights.

Respectfully submitted,

/s/ Jason D. Wyman
Jason D. Wyman (I.D. 11294)
Rogers Townsend & Thomas, PC
100 Executive Center Drive, Suite 210 (29210)
Post Office Box 100200
Columbia, South Carolina 29202
(803) 744-4444

Columbia, South Carolina
August 6, 2018