**FILED**

at____O'clock &____min.____M

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

AUG 06 2018

United States Bankruptcy Court
Columbia, South Carolina

| | |
|---|---|
| IN RE:<br>Johnson D. Koola,<br><br>Debtor(s). | Chapter 13<br>Case No.: 18-01373-jw<br><br>BRIEF |

In compliance with this Court's July 26, 2018 Order, debtor Johnson D. Koola ("Koola") files a 'Brief' addressing which version of the South Carolina Commercial Code should apply to Ditech Financial LLC's ("Ditech") "Affidavit of Lost Note" claim. Koola represents to this Court that the Court should ensure in a Hearing that the provisions of the applicable code have been fully satisfied before a Decision is rendered on "Affidavit of Lost Note".

Koola further represents that this Court held only inconclusive Hearings about Ditech's original claim that it is the holder of Note and Mortgage and Koola's objections to Ditech's Proofs of Claim. The following issues are not presented to the Court: There are deliberate misrepresentations in the Proof of Clam regarding identity of creditor, which constitute fraud. The assignments of Mortgage presented to the Court are ab initio void, fraudulent and fabricated. There are several claims that are not recognized by Koola. More importantly, Koola had no opportunity to present Disallowance of Clams pursuant to 11 U.S.C. § 502(b)(1) and Defenses available to Debtor pursuant to 11 U.S.C. § 558.

Koola now files a comprehensive Brief in a format used in the State Courts addressing the controversial issues related to Proof of Claim.

## TABLE OF CONTENTS

Table of Authorities..................................................................................iii

Arguments...............................................................................................1

A.   EFFECTIVE DATES OF THE APPLICABILITY OF S.C. COMMERCAIL CODE RELATED TO DITECH'S AFFIDAVIT OF LOST NOTE; DITECH'S "AFFIDAVIT OF LOST NOTE" IS A MOOT CLAIM.......................................................1

B.   KOOLA'S OBJECTION TO DITECH'S PROOF OF CLAIM........................2

(i)   Evidence of Perfection and prima facie Validity...........................2

(ii)   Original and current Creditor........................................................3

(iii)   Ditech's Controversial and Contradicting Claims regarding the Holder of Note....4

(iv)   The Mortgage.................................................................................5

(v)   Mortgage Servicer..........................................................................6

(vi)   Ditech has no Standing..................................................................7

(vii)   There are several entries in the Proof of Claim, which are not recognized..........9

(viii)   Prayer..............................................................................................9

C.   DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502(B)(1)..............9

(i)   Loan Modification...........................................................................10

(ii)   Foreclosure action..........................................................................11

D.   DEFENSES AVAILABLE TO DEBTOR PURSUANT TO 11 U.S.C. § 558.........12

CONCLUSION...........................................................................................15

## TABLE OF AUTHORITIES

*Bank of America, N.A. v. Draper,*
405 S.C. 214, 223, 746 S.E.2d 478, 482-83 (S.C. Ct.App., 2013)......................4, 6, 8

*Butner v. United States et al.*, 440 U.S. 48,55 (1979), 440 U.S. at 54 n.9.............13, 14

*Davis v. FEC*, 54 U.S. 724 (2008).................................................................7

*Dubois v. Atlas Acquisitions LLC* and *Adkins v. Atlas Acquisitions LLC*,
834 F.3d 522, 529 (4th Cr. 2016)..............................................................13, 15

*In re Brill*, 318 B.R. 49, 53 (Bankr. S.D.N.Y., 2009)...............................................14

*In re Cameron*, 2016 Bankr. LEXIS (Bankr. D.S.C., 2016)........................................15

*In re Cunningham*, 2015 Bankr. LEXIS 3005 (Bankr. D.S.C., 2015).........................15

*In re Ferrell*, C/A No. 12-04659-JW, (Bankr. D.S.C., 2017)....................................14

*In re Kang Jin Hwang*, 396 B.R. 757 (Bankr. C.D. Cal., 2008)...............................7

*In re Minbatiwalla*, 424 B.R. 104 (Bankr. S.D.N.Y., 2010).......................................8

*In re Nardini*, 2015 Bankr. LEXIS 4331 at 20 (Bankr. D.Vt., 2015).........................10

*In re Parker*, 445 B.R. 301 (Bankr. D.Vt., 2011)....................................................8

*In re Vaughn*, 536 B.R. 670, 675 (Bankr. D.S.C. 2015.........................................14

*In re Veal*, 450 B.R. 897 (BAP 9th Cir., 2011).......................................................8

*In re Wells*, 407 B.R. 873 (Bankr. N.D. Ohio, 2009)..............................................10

*In re Woodberry*, 383 B.R. 373, 379 (Bankr. D.S.C., 2008).....................................6

*Kimbrel v. The Travelers Indem. Co.*,
1994 U.S. App. LEXIS 4323 at 6 (4th Cir. 1994).....................................................13

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 265......................................................1

*Neil v. Wells Fargo Bank, N.A.*, 686 Fed. Appx. 213, 217 (4th Cir. 2017)...................11

*United States v. AVX Corp.*, 92 F.2d 108, 11 n.7 (1st Cir. 1992)...............................7

*Wigod v. Wells Fargo Bank, N.A.*, 673, F.3d 547 (7th Cir. 2012).............................11

...

## STATUES AND RULES

11 U.S.C. § 101(10)(A)

11 U.S.C. § 501(a) and

11 U.S.C. § 502(B)(1)

11 U.S.C. § 558

11 U.S.C. § 1305

12 U.S.C. 1715z-23

12 U.S.C.5219(a)

12 U.S.C. § 5219(a)

FED. R. BANKR. P. 3001(a)

FED. R. BANKR. P. 3001(b)

FED. R. BANK. P. 3001(c), (d)

**ARGUMENTS**

A.  **EFFECTIVE DATE OF THE APPLICABILITY OF S.C. COMMERCIAL CODE RELATED TO DITECH'S AFFIDAVIT OF LOST NOTE;
DITECH'S AFFIDAVIT OF LOST NOTE IS A MOOT CLAIM.**

The Court has raised the question to the parties in the case, which version of the South Carolina Commercial Code is applicable to Ditech's claim of "Affidavit of Lost Note": the version in force before July 1, 2008 or the version that became effective on July 1, 2008. In general, the statute in effect at the time of the transaction or occurrence controls unless the legislative authority has set a different date for the statute to take effect. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265.

Ditech's "Affidavit of Lost Note", paragraph 5, states, "The Lost Note Affidavit is made in connection with a promissory note ("Note"), executed on February 20, 2004,...." There are no other dates mentioned in the body of the Affidavit. The Note could have been sold or negotiated to third parties on any day with effect from February 20, 2004. Thus, this Court should apply the Code that was in force on February 20, 2004.

Following Ditech's "Affidavit Lost Note" claim presented during the June 21, 2018 Hearing, Koola, on July 11, 2018, filed a Motion for an Order Rescheduling the July 24, 2018 Hearing to present evidence that Fannie Mae is the current Holder or Owner of Note given by Koola to the lender. Koola attached an Exhibit to the Motion, a letter from Bank of America, N.A., ("Bank of America") which informed Koola, "[T]he name of the creditor to whom the debt is owned: FNMA ACT/ACT." (Exhibit 1). The letter further informed Koola that with effect from July 1, 2011, the servicing of Koola's loan was transferred to Bank of America, and Bank does not own Koola's loan and only services

Koola's loan on behalf of the creditor, subject to the requirements and guidelines of Koola's creditor.

In its Memorandum filed on July 20, 2018, Ditech stated, "Ditech Financial LLC's witness testified that Fannie Mae was the owner of the loan at issue, and that Ditech Financial LLC was authorized to proceed with the action as the servicer of the loan…"

Since both Koola and Ditech have represented to this Court that Fannie Mae is the creditor, Ditech's "Affidavit of Lost Note" is a moot claim.

**B.    KOOLA'S OBJECTION TO DITECH'S PROOF OF CLAIM**

**(i)    Evidence of Perfection and prima facie Validity**

Acting as an authorized agent for Ditech, Bonial & Associates, P.C., served Proof of Claim and related documents on the debtor and Chapter 13 Trustee on April 19, 2018 and Amended Proof of Claim on June 8, 2018. Koola filed Objections to Proof of Claim on May 3, 2018 and Memorandum in Support of Objections to Proof of Claim and Motion to Disallow the claim on June 8, 2018.

Pursuant to 11 U.S.C. § 501(a) and FED. R. BANKR. P. 3001(b), a Proof of Claim may be filed by a creditor or by the creditor's authorized agent. A Proof of Claim filed by the agent should include a power of attorney evidencing the agent's authority to do so. Both the initial Proof of Claim and the Amended Proof of Claim did not include the mandated power of attorney or authorization. Bonial & Associates, P.C., didn't have the required authorization to file the Proof of Claim.

FED. R. BANK. P. 3001(a) defines a proof of claim as "a written statement setting forth a creditor's claim. A creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11

2

U.S.C. § 101(10)(A). Thus, to be a creditor, an entity must have a right to payment that came into existence by the time the petition was filed, and its standing to file a proof of claim for prepetition debt must exist at the time the claim is filed. 11 U.S.C. § 1305 governs the filing and allowance of postpetition claims.

FED. R. BANK. P. 3001(c), (d) govern proofs of claim and requires that a claim based on a writing and/or a security interest in the debtor's property must include a copy of the writing and evidence of perfection. Where the proof of claim does not adhere to the requirements of Rule 3001 by providing facts and documents necessary to support the claim, it is not entitled to the presumption of prima facie validity. Upon Objection by the debtor, the creditor carries the burden of going forward as well as the ultimate burden of proof to establish its claim.

**(ii)   Original and current creditor**

In the Proof of Claim, Ditech and/or its agent claimed under penalty of perjury that: (i) Ditech Financial LLC fka Green Tree Servicing LLC is the current creditor; and (ii) *The claim has not been acquired from someone else.* (Emphasis added). The statement under penalty of perjury that *the claim has not been acquired from someone else* informs this Court and Koola that Ditech is claiming that it is the current as well as the original creditor. In support of this claim, the agent included a copy of the Note, which was undated and indorsed in blank, given by Koola to Countrywide Home Loans, Inc., ("Countrywide"), which would show to this Court and Koola that Ditech is not the original creditor and not a creditor at all, and acquired the claim from Countrywide. If so, Ditech or its agent lied in the Proof of Claim when it affirmatively stated that the claim has not been acquired from someone else and committed fraud.

3

Further, a copy of a Note, indorsed in blank, does not give a clue to who is the current holder of the original Note. The copies of the Note and Mortgage given by Koola to the original lender is available to anyone in public domain in the case dockets of Koola's foreclosure-related cases in the State Court and Federal Courts. Additionally, the copy of the Note and Mortgage are also available with the attorneys for Bank of America, who prosecuted the foreclosure case against Koola. Anyone could access these records from public domain and make copies of the Note and Mortgage and present to a receptive Bankruptcy Court as proof of holder of the Note prejudicing the debtor. Ditech's affirmative statements in the Proof of Claim and the evidences provided in support of the claim contradict with each other.

In the Amended Proof of Claim filed on June 8, 2018, the agent on behalf of Ditech *reiterated* that (i) Ditech Financial LLC fka Green Tree Servicing LLC is the current creditor; and (ii) *The claim has not been acquired from someone else.* (Emphasis added). The Amended Proof of Claim did not include any new document to prove to this Court and Koola that Ditech is the creditor, and it has not acquired the claim from someone else. Thus, Ditech and or its agent deliberately made false claims in the Amended Proof of Claim.

**(iii)    Ditech's Controversial and Contradicting Claims regarding the Holder of Note**

Outside of the Proof of Claim, Ditech had claimed in writing to this Court at least twice, on April 4, 2018 and May 18, 2018, that it is the holder of Koola's Note and Mortgage. In spite of demand by Koola that Ditech produce the original Note and Mortgage, it has failed to produce the original Note and Mortgage in the Court. The copy of the Note in lieu of the original Note is not acceptable in contested matters. A

4

duplicate in lieu of an original is not admissible when: (i) a genuine question is raised as to the authenticity of the original; or (ii) in circumstances it would be unfair to admit the duplicate in lieu of the original. *Bank of America, N.A. v. Draper*, 405 S.C. 214, 223, 746 S.E.2d 478, 482-83 (S.C. Ct.App. 2013) (Citing Rule 1003, South Carolina rule of Evidence). Again, on June 21, 2018, a Ditech's representative filed an "Affidavit of Lost Note" and claimed in the Court that the original Note is lost. On July 20, 2018, it filed a document in the Court stating that Fannie Mae is the current creditor. All these controversial and contradicting statements by Ditech or its counsel do not substantiate the claim in the Proof of Claim that (i) Ditech Financial LLC fka Green Tree Servicing LLC is the current creditor; and (ii) *The claim has not been acquired from someone else*. (Emphasis added).

(iv)    The Mortgage

Ditech did not produce the original Mortgage in the Court. Instead, it produced three assignments to support its argument that it is the holder of the Mortgage. The first assignment was the assignment of the Mortgage from Mortgage Electronic Registration Systems, Inc. ["MERS"] as nominee for Countrywide to BAC Home Loans Servicing LP ("BAC Home Loans") fka Countrywide Home Loans Servicing LP on August 17, 2010. John S Kay, [John B. Kelchner, and Alan M. Stewart] signed the assignment acting as the Assistant Secretary of MERS. The notary public notarized the sworn statement of John Kay that he is the Assistant Secretary of MERS. John S Kay, John B. Kelchner, and Alan M. Stewart were, *in fact*, attorneys of now bankrupt Korn Law Firm; they were and are not secretaries of MERS. In summary, the assignment of the Mortgage from MERS to BAC Home Loans was fraudulent and void *ab initio*.

5

The second assignment was from Bank of America to Green Tree Servicing LLC ("Green Tree") on May 16, 2013. The assignment stated that the original lender is MERS, which is not true. The original lender was Countrywide. It makes Koola to allege that the second assignment was fabricated. Moreover, the Mortgage, which Bank of America had already assigned to Green Tree, was ab initio void as established earlier, and therefore, the second assignment to Green Tree has no legal validity.

The third assignment was from MERS again to Green Tree on June 4, 2013. MERS had already transferred and assigned the Mortgage to BAC Home Loans on August 17, 2010. It cannot transfer and assign a Mortgage, which it does not have in its possession. Moreover, the Mortgage was ab initio void from the first assignment. Finally, the third assignment was signed by Heather Navarro, an Assistant Secretary of National Title Corporation (NTC) by impersonating as the assistant secretary of MERS. The notary public notarized that Heather Navarro is personally known to the notary public as the Assistant Secretary of MERS. Thus, the third assignment of the Mortgage is also ab initio void, fraudulent and fabricated. In the absence of original Mortgage, debt owed on the Note shall be treated as unsecured debt.

**(v)   Mortgage Servicer**

A mortgage servicer is an agent of the note holder or has contractual relationship with the note holder. It can pursue a claim against the debtor by virtue of its pecuniary interest in collecting payments under the terms of the note and mortgage. *Bank of America, N.A.*, 405 S.C. at 222, 76 S.E.2d at 482; *In re Woodberry*, 383 B.R. 373, 379 (Bankr. D.S.C., 2008). The key words are the *"terms of the note and mortgage"*. A mortgage servicer services mortgage loans on behalf of the creditor, subject to the

6

requirements and guidelines of creditor. A mortgage servicer can also file a proof claim but in the name of the creditor. On demand, the servicer must produce the original Note and Mortgage from the creditor. Nowhere in the Proof of Claim Ditech has claimed that it is Koola's mortgage servicer.

### (vi) Ditech has no Standing

Ditech has not produced the original Note and Mortgage, and therefore, it is not the creditor who has a claim against Koola. The Proof of Claim has to be filed in the name of the creditor at the time Petition was filed. Ditech has no standing to pursue an action against Koola. A party must have an actionable claim to have standing to pursue a claim against a defendant and must satisfy the constitutional standing considerations of Article III of the Constitution. *In re Kang Jin Hwang*, 396 B.R. 757 (Bankr. C.D. Cal., 2008) reversed on other grounds by *In re Kang Jin Hwang*, 438 B.R. 661 (C.D. Cal., 2010). "To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. FEC*, 54 U.S. 724 (2008). "A defect in standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent. *United States v. AVX Corp.*, 92 F.2d 108, 11 n.7 (1st Cir. 1992).

Under the circumstances of the case, this Court should find that Ditech is not the creditor, and it has no standing to pursue a claim against Koola. This Court should disallow the Proof of Claim filed by Ditech.

Case laws abound where the Courts have disallowed the proof of claim for lack of standing. In *In re Wells*, 407 B.R. 873 (Bankr. N.D. Ohio, 2009), the Court sustained

7

debtor's objection to the proof of claim and disallowed the claim in its entirety because the debtor bank failed to show that it had standing to file a claim and also failed to show at the hearing that it is entitled to enforce the note and mortgage. In *in re Veal*, 450 B.R. 897 (BAP 9th Cir., 2011), the Panel reversed the Bankruptcy Court's order granting Bank relief from stay motion and vacated the Court's order overruling the debtor's claim objection and remanded for further proceedings because the Panel found that the bank had no standing to file proof of claim. In *In re Minbatiwalla*, 424 B.R. 104 (Bankr. S.D.N.Y., 2010), the Court sustained debtor's objection to creditor's proof of claim and disallowed the claim without prejudice because creditor failed to substantiate the claim, failed to present evidence necessary to demonstrate that it is either the servicer, note and mortgage holder or assignee that it had standing to assert the claim. In *In re Parker*, 445 B.R. 301 (Bankr. D.Vt., 2011), the Court denied creditor bank's motion for summary judgment because the bank failed to show that it was the holder of the note as of the date of debtor's bankruptcy filing.

Under information and belief, Koola represents to this Court that in every Bankruptcy or foreclosure case adjudicated by the Courts in this District and the State, the creditor, or servicer with authority from the creditor, has produced the original Note and Mortgage with one notable exemption. In *Bank of America, N.A.*, 405 S.C. at 223-24, 746 S.E.2d at 483, Bank did not produce the original Note in the foreclosure case. However, the Bank asserted throughout the foreclosure that *it was the holder of the Note and Mortgage when it filed the foreclosure action*. After the filing of the foreclosure case, the Bank asserted, the holder of the Note became another party because of

8

mergers and transfers between financial institutions. Bank produced various supporting documents to substantiate its case, and the Court accepted these arguments.

**(vii)   There are several entries in the Proof of Claim, which are not recognized.**

The Proof of Claim includes several entries entitled $15.00 Inspection Fee and several entries entitled $225 Title Cost. Ditech did not substantiate how these clams arose. The proof of Clam also includes several entries called servicing cost, foreclosure cost and foreclosure attorney fees, and judicial invoices claiming expenses for foreclosure action against the debtor on several different dates. None of these claims has been substantiated and should be disallowed.

**(viii)   Prayer**

Based on these arguments, Koola prays to this Court to find that Ditech has no standing to pursue a claim against Koola, and this Court should disallow the claim in its entirety.

Ditech and/or its agent's claim in the Proof of Claim that it is the current creditor, and that it has not acquired the claim from someone else is a fraudulent claim. The copy of the Note it attached to the Proof of Claim is copied from sources available in public domain. The third assignments and possibly the second assignment of the mortgage are fabricated on behalf of Ditech. Ditech and its agent committed perjury. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. Koola prays to this Court that the Court takes appropriate action.

**C.   DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502(B)(1)**

When an objection is filed, the court must determine the amount of the claim and allow it, except to the extent that: such claim is unenforceable against the debtor and

9

property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.] 11 U.S.C. § 502(B)(1).

**(i)   Loan Modification**

Pursuant to 12 U.S.C. §1715z-23, Congress established "Hope for Homeowners Program" under Federal Housing Administration to enable loan holders to offer affordable loan modification to distressed borrowers so as to allow homeowners to avoid foreclosure. "Hope for Homeowners Program" supplemented the Home Affordable Modification Program Guidelines. The clear mandate of 12 U.S.C. §§ 1715z-23, 5219(a) is that "certain homeowners are entitled to a modification of the terms of their home mortgage, and certain lenders are required to respond to requests for such modification of residential mortgage loans according to a prescribed process (the Home Affordable Modification Guidelines)." *In re Nardini*, 2015 Bankr. LEXIS 4331 at 20 (Bankr. D.Vt., 2015).

In July 2009, Koola applied for a loan modification to Bank of America. In August 2009, Bank of America granted Koola an offer of Trial Period Plan/Special Forbearance Plan mandating payment of $243 per month for three months and an offer of permanent loan modification at the end of the successful Trial Period Plan. By November 1, 2009, Koola complied with Trial Period Plan (TPP) payment, but the Bank did not offer any loan modification in 2009. By November 2009, the debtor fell behind his mortgage-related dues. On February 4, 2010, Bank of America offered Koola a loan modification, (Exhibit 2), which he could not accept because: (i) The new mortgage payment after the loan modification offer was higher than that before the loan modification; (ii) The loan modification offer was unaffordable; and (iii) The offer was belated as Koola was

10

already in default since November 2009. On March 25, 2010, Bank of America offered Koola a second loan modification, (Exhibit 3), which he could not accept because: (i) the second loan modification offer was also unaffordable; and (ii) and the offer was belated as Koola was already in default.

In *Wigod v. Wells Fargo Bank, N.A.*, 673, F.3d 547 (7th Cir. 2012), Court of Appeals for the Seventh Circuit held *inter alia* that: (i) when mortgagee Wells Fargo executed the TPP, its terms included a unilateral offer to modify mortgagor Wigod's loan conditioned on her compliance with the stated terms of the bargain and constituted a contract; and (ii) although the TPP payments were an initial estimate, the final loan modification amount should be reasonably comparable to the initial TPP payments. Accordingly, the Seventh Circuit ordered Wells Fargo to offer Wigod an affordable loan modification. More than 250 case laws have followed *Wigod* in one or more respects.

Following *Wigod*, Court of Appeals for the Fourth Circuit ruled, "Under a TPP governed by HAMP, the lender is required to offer some sort of good faith permanent modification...consistent with HAMP guidelines" once the borrower "fulfill[s] the TPP conditions," *Neil v. Wells Fargo Bank, N.A.*, 686 Fed. Appx. 213, 217 (4th Cir. 2017). Several District Courts within the Fourth Circuit have followed *Wigod*.

Bank of America offered Koola a loan modification twice in 2010. At that time, the offers were unaffordable, and Koola could not accept them. This Court should order the successor-creditor of Bank of America to offer Koola an affordable loan modification.

**(ii)    Foreclosure action**

In July 2010, BAC Home Loans Servicing LP FKA Countrywide Home Loans Servicing LP (plaintiffs) initiated a foreclosure action against Koola in the State Court.

11

(Exhibit 4). Koola counterclaimed in the foreclosure action alleging *inter alia* violation of "FIRREA Federal Appraisal Regulations", codified under 12 C. F. R. §§ 34.41, 34.43, 34.44. 34.45, 34.62, 564.1, in the appraisal of Koola's condominium, which ultimately caused Koola's foreclosure and bankruptcies. [Interagency Real Estate Appraisal Regulations, Final Revisions (FIL-41-94) and Interagency Appraisal and Evaluation Guidelines dated October 27, 2014, adopted pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989].

The State Master in Equity's Court dismissed Koola's counterclaims stating that Koola had filed for Chapter 7 Bankruptcy in 2008, which precluded Koola from asserting counterclaims against Bank of America. (Exhibit 5). The State Court of Appeals dismissed Koola's Appeal on the ground that the *Trustee did not formally abandon the bankruptcy estate*, therefore, the counterclaims belonged to the bankruptcy estate, and Koola could not assert counterclaims against Bank of America. (Exhibit 6).

The State Courts dismissed Koola's counterclaims in the foreclosure action on grounds not recognized by Bankruptcy Code. After review, this Court should hold Bank of America's successor-creditor accountable for damages Koola suffered due to the failure of Bank of America to appraise his condominium pursuant to "FIRREA Federal Appraisal Regulations".

**D.    DEFENSES AVAILABLE TO DEBTOR PURSUANT TO 11 U.S.C. § 558**

"The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including *statutes of limitations*, statutes of frauds, usury, and any other personal defenses...." 11 U.S.C. § 558. (Emphasis added).

12

"Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding…The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests,…" *Butner v. United States et al.*, 440 U.S. 48, 55 (1979).

Koola defaulted on his mortgage loan in November 2009. Consequently, his loan was accelerated and became due in November 2009. During the June 21, 2018 Hearing, the Ditech's representative entered into evidence that with effect from April 2013, Ditech fka Green Tree became Koola's creditor and has the right to collect payments from Koola. (Exhibit 7). "[A] cause of action accrues "the moment the right to commence an action comes into existence." *Kimbrel v. The Travelers Indem. Co.*, 1994 U.S. App. LEXIS 4323 at 6 (4th Cir. 1994). Thus, Ditech's right to the claim to collect on defaulted loan started to run the statute of limitations on May 1, 2013. Ditech's claims against Koola, if any, are now time-barred. If objected to, the [Bankruptcy] Code disallows claims based on time-barred debts. *Dubois v. Atlas Acquisitions LLC* and *Adkins v. Atlas Acquisitions LLC*, 834 F.3d 522, 529 (4th Cr. 2016). Pursuant to 11 U.S.C. § 558 and the Authorities from case laws cited herein, this Court should sustain Koola's objection to Ditech's Proof of Claim based on statue of limitations and disallow the claim.

"In *In re Brill*, 318 B.R. 49, 53 (Bankr. S.D.N.Y., 2009), the Bankruptcy Court applied the six-year statute of limitations in [New York] C.P.L.R. § 213 to a claim by the debtor's brother, *who was attempting to collect an unpaid sum based upon a promissory*

13

*note*, and found that the claim should be disallowed because more than six years had elapsed since the debtor last made a payment on the note." (Emphasis added).

In 2015, this Court sustained debtor's objection to LVNV's [creditor] proof of claim and disallowed the claim in *In re Vaughn*, 536 B.R. 670, 675 (Bankr. D.S.C. 2015) (C/A No. 15-02896-dd) and ruled, "State law and non-bankruptcy federal law supply the underpinnings for much of the Bankruptcy Code. Property interests, security interests, and the debtor-creditor relationship turn on non-bankruptcy law...." Quoting the Authority of the U.S. Supreme Court in *Butner,* this Court ruled, "[T]he Bankruptcy Act recognizes and enforces the laws of the state affecting dover, exemptions, the validity of mortgages, priority of payment and the like." *Butner*, 440 U.S. at 54 n.9 (quoting *Stellwagen v. Clum*, 245 U.S. 506, 613 (1918).

In *In re Ferrell*, C/A No. 12-04659-JW, (Bankr. D.S.C., 2017), this Court, after noticing that the creditor failed to appear at the hearing on the Motion objecting to creditor's claims and present evidence to establish its entitlement to the Disputed Amounts, ordered that: (1) Loan 7209 is deemed to be current as of and through August 14, 2017, and (2) To the extent that there exists any other postpetition amounts for fees, charges, and/or expenses that Shellpont [creditor] might assert were incurred in connection with claim #5 and are recoverable against the Debtors or their property, *these sums are deemed waived, cancelled, and discharged.* (Emphasis added).

"[I]f a bankruptcy proceeds as contemplated by the Code, a claim based on a time-barred debt will be objected to by the trustee, disallowed, and ultimately discharged, thereby stopping the creditor from engaging in any further collection activity. *Dubois; Adkins*, 834 F.3d at 531.

14

In *In re Cunningham*, 2015 Bankr. LEXIS 3005 (Bankr. D.S.C., 2015), this Court ordered, adjudged, and decreed that [debtor] Cunningham's Objection is sustained and [creditor's] Claim 12-1 [for the collection of time-barred debts] is disallowed.

In *In re Cameron*, 2016 Bankr. LEXIS (Bankr. D.S.C., 2016), this Court, after finding that the three-year statute of limitations applied to creditor Bank of America's claim in the South Carolina federal forum, ordered that [debtor] Ashe's Objection to Claim is sustained and disallowed the claim.

After review, this Court should allow Koola defenses available to him pursuant to 11 U.S.C. § 558.

## CONCLUSION

Based on the forgoing arguments, Koola prays to this Court: (i) to find that Ditech Financial LLC does not having standing to assert a claim against Koola in the current Bankruptcy case, (ii) to disallow its claim in its entirety, (iii) to disallow claims pursuant to 11 U.S.C. § 502(B)(1), and (iv) to allow defenses available to Koola pursuant to 11 U.S.C. § 558.

Respectfully submitted,

Mt Pleasant, South Carolina
August 6, 2018

Johnson D Koola, Debtor, pro se
1587 Cambridge Lakes Dr
Mt Pleasant, SC 29464
(843) 849-9241

15