# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

|  |  |
|---|---|
| IN RE: | C/A No. 18-01373-JW |
| Johnson D. Koola, | Chapter 13 |
|  | **AMENDED ORDER[1]** |
| Debtor(s). | |

This matter comes before the Court upon Johnson D. Koola's ("Debtor") Objection ("Objection") to the Proof of Claim filed by Ditech Financial LLC fka Green Tree Servicing LLC ("Ditech"). Ditech filed a Response to the Objection, and a hearing was held on the matter. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157. Pursuant to Fed. R. Civ. P. 52, as made applicable to this proceeding under Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[2]

## FINDINGS OF FACT

1.  On February 20, 2004, Debtor executed a fixed rate note ("Note") in the amount of $136,192.00 to Countrywide Home Loans, Inc.

2.  Also on February 20, 2004, Debtor executed a first mortgage ("Mortgage") as security. The Mortgage encumbers Debtor's principal residence, 1587 Cambridge Lakes Drive, Mount Pleasant, South Carolina ("Principal Residence"), and was recorded in the public records for Charleston County. The Mortgage indicated that the "mortgagee" is Mortgage Electronic Registration Systems, Inc. ("MERS") and that the "lender" is Countrywide Home Loans, Inc. For

---

[1]    This Order is amended as ordered by the Order of this Court entered on January 15, 2019.

[2]    To the extent the following findings of fact are conclusions of law, they are so adopted, and to the extent the following conclusions of law are findings of fact, they are so adopted.

the purposes of this Order, the obligations and duties evidenced in the Note and Mortgage will be collectively referred to as the "Debt".

3.      It appears Federal National Mortgage Association ("Fannie Mae") became the owner of the Debt in March 2004.[3]

4.      On March 20, 2009, Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code ("Chapter 7 Case") in this District (C/A No. 09-02104-dd). In the schedules for the Chapter 7 Case, Debtor indicates that Countrywide Home Loans had a first mortgage loan secured by his Principal Residence. It appears notice of the Chapter 7 Case was properly served on Countrywide Home Loans. On April 30, 2009, the Chapter 7 Trustee filed a Report of No Distribution, and on July 13, 2009, an Order Discharging Debtor was entered pursuant to 11 U.S.C. § 727. The Chapter 7 Case was closed on July 13, 2009.

5.      On July 27, 2010, BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP ("BAC Home Loans") filed a foreclosure action of the Mortgage against Debtor in state court (2010-CP-10-6060) ("Foreclosure Action").

6.      On August 27, 2010, MERS executed an assignment of the Mortgage to BAC Home Loans, which was recorded on September 9, 2010 in the public records of Charleston County, South Carolina.

7.      In June of 2011, Bank of America, N.A. ("Bank of America") sent a Fair Debt Collection Practices Act Notice to Debtor which indicated that Fannie Mae was "the creditor to

---

[3]      In the Correspondence filed by Debtor on August 13, 2018, Debtor indicated that he spoke with a representative of Fannie Mae, and that he was informed that "Fannie Mae is the owner of Koola's mortgage loan[, and] Fannie Mae became the owner of Koola's mortgage loan on March 1, 2004 . . . ." Relying on these facts, Debtor has asserted in that Correspondence that Ditech withheld "information from the Court that Fannie Mae is the creditor and owner of Koola's mortgage loan and that Ditech is only a servicer of Koola's loan owned by Fannie Mae."

whom the debt is owed" and that Bank of America "only services your loan on behalf of [the] creditor . . . ."

8.      On October 13, 2011, the caption in the Foreclosure Action was amended to reflect that the Plaintiff was Bank of America because BAC Home Loans and Bank of America merged, leaving Bank of America as the surviving entity.

9.      On May 22, 2012, after a motion filed by the Debtor and a hearing, this Court entered an Order Granting Motion to Reopen Case in Debtor's Chapter 7 Case to permit Debtor to file amended schedules. On June 6, 2012, Debtor filed an amended schedule B indicating that he had a contingent unliquidated claim against "BAC Home Loans Servicing, LP a/k/a Bank of America f/k/a Countrywide Home Loans Servicing, LP for failure to inspect and all related claims." On November 13, 2013, the Court entered an Order Discharging Trustee and Order to Close Case.

10.      On April 23, 2013, Green Tree Servicing LLC ("Green Tree") sent a letter to Debtor entitled "Notice of Assignment, Sale, or Transfer of Servicing Rights." The letter stated that "the servicing of [Debtor's] mortgage loan, that is, the right to collect payments from you, is being assigned sold or transferred from Bank of America, N.A. ("Bank of America") to Green Tree Servicing LLC ("Green Tree") effective May 1, 2013." The letter also indicated the address that Debtor is to send payments to Green Tree.

11.      On May 16, 2013, Bank of America executed an assignment of the Mortgage to Green Tree, which was recorded on May 28, 2013 in the public records of Charleston County, South Carolina.

12.     On June 4, 2013, MERS executed a purported assignment of the Mortgage to Green Tree, which was recorded on June 17, 2013 in the public records of Charleston, County, South Carolina.

13.     On August 31, 2015, Green Tree merged with DT Holdings LLC and Ditech Mortgage Corp., with the surviving entity being Ditech.

14.     Throughout this time, when not stayed, the Foreclosure Action continued to proceed. During this period, the state court's Master-in-Equity granted summary judgment to Bank of America regarding Debtor's counterclaims. Debtor appealed the judgment to the Court of Appeals of South Carolina, which affirmed the lower court's holdings. See Bank of America v. Koola, Appellate Case No. 2014-001323, 2016 WL 640530 (S.C. Ct. App. Feb. 17, 2016). In addition, Debtor removed the Foreclosure Action from the state court to the U.S. District Court for the District of South Carolina. The District Court held that the Foreclosure Action should be remanded back to state court. See Bank of America, N.A. v. Koola, 2016 WL 8672929 (D.S.C. July 29, 2016). Thereafter, Debtor appealed the District of South Carolina's opinion to the Fourth Circuit Court of Appeals, where, the Fourth Circuit dismissed Debtor's appeal. See Bank of America, N.A. v. Koola, 691 Fed. App'x 128 (4th Cir. 2017). After appealing the Fourth Circuit Court of Appeals' decision to the Supreme Court of the United States, the Supreme Court denied certiorari on February 20, 2018. See Koola v. Bank of America, N.A., 138 S.Ct. 1004 (2018) (Mem.).  A Judgement of Foreclosure and Sale has not yet been entered in the Foreclosure Action.

15.     On March 20, 2018, Debtor filed a *pro se* petition for relief under chapter 13 of the Bankruptcy Code, staying the Foreclosure Action.

16.     In Debtor's schedule D filed on March 20, 2018, Debtor indicates that Bank of America holds a secured claim on Debtor's principal residence. Debtor also listed "Green Tree

Bankruptcy Department" and Ditech as others to be notified about his bankruptcy in Part 2 of

schedule D. Further, Debtor included a supplement to Schedule D, which states:

> Countrywide Home Loans, LLC, initiated a foreclosure case against debtor in 2010. Later, Bank of America became the plaintiff. In December 2017, attorneys for Bank of America informed the State Court that: (i) in 2013, Bank of America lawfully assigned the mortgage to Green Tree Servicing LLC; (ii) at some time later DITECH Financial became the mortgage holder but without any formal assignment and recordation of the mortgage; and (iii) Bank of America continued to litigate the foreclosure case against the debtor even though it ceased to be the real party in interest.

> There are questions who is the real party in interest and whether statute of limitations bars any claims by plaintiff.

17.    Also on March 20, 2018, Debtor filed a proposed chapter 13 plan. In Part 3.1 of the

proposed chapter 13 plan, Debtor proposed "to engage in loss mitigation efforts with first

mortgagee according to the applicable guidelines or procedures of the Judge assigned to this case."

Debtor amended the plan on April 23, 2018, which continued to provide for loss mitigation. On

July 6, 2018, Debtor filed a correspondence indicating that he intends to abandon his pursuit of

loss mitigation; however, Debtor has not filed a new amended plan to change the treatment of the

Debt.

18.    On April 4, 2018, Ditech filed an Objection to Confirmation of Plan, in which it

alleged it is a holder of a secured claim against Debtor consisting of the Note and Mortgage.

19.    On April 19, 2018, Ditech filed its proof of claim ("Proof of Claim"). The Proof of

Claim indicated that the creditor was Ditech Financial LLC fka Green Tree Servicing LLC and

that Ditech had not acquired the claim from someone else. The Proof of Claim indicated a secured

claim of $173,805.30 and an amount of $87,180.63 to cure the pre-petition default.

20.    On May 7, 2018, Debtor filed the Objection to the Proof of Claim, which among

other things, challenged Ditech as the proper party to file the Proof of Claim.

21.    On June 8, 2018, Ditech filed an Amended Proof of Claim. It appears the Amended Proof of Claim contains the same information on Official Form 410 and Official Form 410 A as the Proof of Claim filed on April 19, 2018.

22.    On June 11, 2018, Ditech filed its response to the Objection. The response states that "[Ditech] would show that its [in] possession of original note, which has been endorsed in blank, and that makes [Ditech] a real party in interest and that it has standing to proceed in this case. . . . [Ditech] intends to present the original note for the Court's inspection at the hearing."

23.    Also on June 11, 2018, Debtor filed a Memorandum in Support of Objections to Creditor's Proof of Claim and Motion to Disallow the Claim. In this Memorandum, Debtor asserts Ditech has no standing to file the Proof of Claim, alleging: (1) that the Proof of Claim does not establish who is the current holder of the Note; (2) that two of the assignments of the Mortgage are forged and fraudulent documents; (3) that because Bank of America is the Plaintiff in the Foreclosure Action, if Ditech were permitted to collect on the Debt, it would subject Debtor to double collection; and (4) that Ditech should not be permitted to recover certain attorney's fees and costs listed in the Proof of Claim.

24.    On June 18, 2018, in anticipation of the hearing on Debtor's Objection to the Proof of Claim, both Debtor and Ditech filed separate Statements of Dispute, which outlined the issues to be decided by the Court, the positions of the parties, the evidence and testimony to be presented, and the legal authority to be presented at the hearing. In Ditech's Statement of Dispute, Ditech indicated for the first time that it was not in possession of the Note and that the Note was in fact lost, but that it was entitled to enforce the lost Note pursuant to the South Carolina Commercial Code.

25.     A hearing was held on the Objection, where both parties submitted evidentiary exhibits into the record and testimony was taken from Debtor and Nicole Gostebski, a representative and employee of Ditech. At the hearing Ditech introduced into evidence an Affidavit of Lost Note ("Lost Note Affidvait") executed by Teresa G. Harris, an Assistant Vice President of Ditech, on June 15, 2018. The Lost Note Affidavit stated that "Ditech acquired the right to enforce the Note from Bank of America, N.A., which was entitled to enforce the Note when the loss of possession occurred[,]" that "[t]he original Note has been inadvertently lost, misplaced, or destroyed, or is in the wrongful possession of an unknown person or a person who cannot be found or is not amendable to service of process[,]" and that "[t]he original Note is not in the custody and control of Ditech." The testimony of Ms. Gostebski echoed the information provided in the Lost Note Affidavit. In addition, Ms. Gostebski testified that Ditech was not aware that the Note was lost until June 15, 2018 and that it is Ditech's belief that Bank of America lost the Note. She also testified that Fannie Mae is the owner of the Debt and that Ditech is only the servicer of the Debt.

26.     At the hearing on the Objection, counsel for Ditech represented that the Note was transferred to counsel for Bank of America, Korn Law Firm, in 2010 and that Korn Law Firm subsequently ceased operations, at which time all records were destroyed. It appears Ditech is asserting that Korn Law Firm lost the Note during its representation of Bank of America.

27.     On July 13, 2018, Debtor filed a Motion for an Order Rescheduling the July 24, 2018 Hearing: (i) to Present Evidence that Fannie Mae is the Current Holder or Owner of Note Given by Koola to the Lender, (ii) To Review Ditech's "Affidavit of Lost Note" to Determine Its Compliance with S.C. Code. Ann. § 36-3-309 and Its Trustworthiness, and (iii) To Dismiss Ditech's Proof of Claim ("Motion to Reschedule"). In the July 13, 2018 Motion, Debtor asserts

that Fannie Mae is the owner or holder of the Note and submitted a June 2011 letter he received from Bank of America indicating that Fannie Mae is "the creditor to whom the debt is owed" in support of this assertion. In addition, Debtor submitted with the July 13, 2018 Motion, a letter drafted by Debtor to Fannie Mae dated July 11, 2013 indicating that he "understand[s] Fannie Mae currently owns my mortgage."

28.     On July 19, 2018, the Court entered an Order Setting Preliminary Status Hearing on the Motion to Reschedule, noting that the motion included Debtor's request to provide further argument and evidence regarding his Objection to Ditech's Proof of Claim.

29.     On July 20, 2018, Ditech filed a Memorandum in Advance of the Preliminary Status Hearing, and Debtor filed a Statement of Dispute.

30.     After holding the Preliminary Status Hearing, the Court entered an Order on July 26, 2018 setting a deadline for the parties to submit briefs addressing the applicable code section of the South Carolina Commercial Code and to tender additional proposed documents pertinent to the ownership of the Note.

31.     On August 6, 2018, the parties filed briefs regarding the applicable code section of the South Carolina Commercial Code. Debtor indicated in his August 6, 2018 brief that he is in default on the Mortgage Debt since November 2009, and raised additional, new arguments not previously raised in his Objection, including issues related to the statute of limitations, prior loan modification offers, and the state court's denial of his counterclaims in the Foreclosure Action. On August 13, 2018, Debtor indicated in correspondence filed with the Court that he telephoned Fannie Mae and was informed by it that it is the owner of his mortgage loan since March 1, 2004 and that Ditech is the servicer of the loan.

32.     In its brief filed on August 6, 2018, Ditech indicated that Fannie Mae is the owner of the Note, referencing the website providing the Fannie Mae Servicing Guides, which governs the relationship between Fannie Mae and its servicers. The March 14, 2018 Servicing Guide provides that "Fannie Mae is at all times the owner of the mortgage note, whether the mortgage loan is in Fannie Mae's portfolio or part of the MBS pool." See § A2-1-04 Fannie Mae Single Family Servicing Guide (Mar. 14, 2018) *available at* https://www.fanniemae.com/content/guide/svc031418.pdf (hereinafter "2018 FNMA Servicing Guide").[4] Further, Debtor has maintained that Fannie Mae is the proper creditor in this proceeding and has asserted that "Fannie Mae is the owner or holder of the Note . . . ."[5] Therefore, the Court finds Fannie Mae is the owner of the Note.

33.     In addition, it does not appear the parties dispute that the Debt represented by the Proof of Claim exists or that Fannie Mae has been and is the owner of the Debt. Therefore, the parties do not dispute that Fannie Mae is the ultimate beneficiary of the collection of the Debt.

## CONCLUSIONS OF LAW

In his *pro se* Objection to the Proof of Claim,[6] Debtor does not dispute that he owes the Debt or that the Mortgage encumbers his Principal Residence. Debtor has stated on the record that he wants to identify and treat the correct creditor for the Debt in his bankruptcy case.

---

[4]     This appears to have been Fannie Mae's requirement since at least May 23, 2008. See § 202.07.01 Fannie Mae Single Family 2011 Servicing Guide (June 10, 2011) available at https://www.fanniemae.com/content/guide/svc061011.pdf. (indicating that "Fannie Mae is at all times the owner of the mortgage note, whether the mortgage loan is in Fannie Mae's portfolio or part of the MBS pool[,]" and noting that this provision became effective on May 23, 2008).

It appears Fannie Mae gives temporary possession of the note to a servicer to assist with representing Fannie Mae's interest in litigation, including foreclosure and bankruptcy cases, by providing the servicer with "holder" status of the note. See § A2-1-04 2018 Fannie Mae Servicing Guide.

[5]     Specifically, Debtor titled his arguments in his July 13, 2018 Motion as the following: "Since July 1, 2011, Fannie Mae is the owner or holder of the Note given by Koola to Countrywide."

[6]     Because debtor is acting *pro se* in this matter, the Court liberally construes Debtor's pleadings. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972) (per curiam) (noting that "[the] allegations such as those asserted by [the pro

Debtor's Objection predominately centers on who has the standing to file the Proof of Claim against him, and only disputes minor amounts reflected in the claim. It does not appear that there is a dispute as to who is the owner of the Debt as both parties allege that Fannie Mae is the owner and the ultimate beneficiary of the collection of the Debt. However, there is a dispute as to whether Ditech is the proper party to file the Proof of Claim for the Debt in this bankruptcy case.

### Burden of Proof

Fed. R. Bankr. P. 3001(f) provides that a claim filed in accordance with Fed. R. Bankr. P. 3001 shall have *prima facie* evidence of validity and amount. If a claim has been filed properly, the party objecting to the claim would have the initial burden of overcoming the claim's *prima facie* evidence. If that burden is overcome, the burden shifts to claimant to demonstrate the validity and amount of the claim.

Debtor has raised several issues regarding whether Ditech's Proof of Claim was filed in accordance with Fed. R. Bankr. P. 3001, including whether the appropriate attachments were filed with the Proof of Claim,[7] whether the official proof of claim form was properly completed,[8] and whether Jason A. Contrill and Mary D. Vitartas of Bonial & Associates, P.C. were authorized agents of Ditech to file the Proof of Claim on its behalf.[9]

---

se litigant], however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence" and holding that a pro se complaint is held to less stringent standard than formal pleadings filed by attorneys).

[7]    Specifically, Debtor noted that the assignment from MERS to BAC Home Loans was not attached to either the originally filed or amended proof of claim.

[8]    Debtor asserted that Ditech did not properly complete the Official Form 410 because it did not indicate that it had acquired the claim from someone else.

[9]    Debtor alleged that the power of attorney indicating that Mr. Contrill and Ms. Vitartas were agents of Ditech were not attached. To resolve this issue, the Court notes that a prior version of the official proof of claim form required a creditor's agent to attach a power of attorney to the proof of claim; however, this requirement was removed from the official form as part of the 2012 amendments to the official forms and is not a requirement of the current version of the form (Official Form 410). See In re Rehman, 479 B.R. 238, 244 n.10 (Bankr. D. Mass. 2012).

However, it is not necessary for the Court to determine whether Ditech's Proof of Claim was properly filed under Fed. R. Bankr. P. 3001 because it is apparent that Debtor has overcome any *prima facie* presumption (if such is applicable) the Proof of Claim may have through his challenges to Ditech's standing. Therefore, the burden is on Ditech to establish its claim.

### *Debtor's Prior Bankruptcy Discharge*

While both parties' arguments center on whether Ditech is entitled to enforce the Note under the South Carolina Commercial Code, neither party has addressed the effect of Debtor's prior discharge from his 2009 chapter 7 bankruptcy on the enforcement of the Note. In the Chapter 7 Case, Countrywide Home Loans was listed as the holder of the Debt and provided notice of the proceedings. After a determination of no assets, the Court entered an Order Discharging Debtor pursuant to 11 U.S.C. § 727. Section 727(b) of the Bankruptcy Code provides that the discharge "discharges the debtor from all debts that arose before the date of the order for relief under [chapter7 of the Bankruptcy Code]." However, while a debtor may be discharged from any personal obligation arising under a debt, any lien surviving the bankruptcy case may remain enforceable against the discharged debtor's property after the bankruptcy.

In the present matter, Debtor has filed what is commonly referred to as a "chapter 20" bankruptcy filing in which a debtor files a chapter 13 bankruptcy to address debts and liens after receiving a discharge in a prior chapter 7 bankruptcy case. In <u>Johnson v. Home State Bank</u>, 501 U.S. 78, 111 S.Ct. 2150 (1991), the Supreme Court of the United States has elaborated on the effect of a chapter 7 discharge on a secured claim addressed in a subsequent chapter 13 reorganization plan. In <u>Johnson</u>, the Supreme Court indicated that the chapter 7 discharge "extinguishes only one mode of enforcing a claim—namely, an action against the debt *in personam*—while leaving intact another—namely an action against the debtor *in rem*." <u>Id.</u> at 84,

11

111 S.Ct. at 2154. Therefore, a chapter 7 bankruptcy discharge, without more, does not eliminate a creditor's right to foreclose on a valid mortgage lien. Id. at 82, 111 S.Ct. at 2153. The Supreme Court went on to hold that the creditor's *in rem* rights to enforce the mortgage by foreclosure was a claim under 11 U.S.C. § 502(b) against property of the debtor's estate and may be treated in a subsequent chapter 13 plan.

Under the South Carolina Commercial Code,[10] a defense to the right to enforce a negotiable instrument is the "discharge of the obligor in insolvency proceedings."[11] S.C. Code Ann. § 36-3-305 (2018).[12] In this case, it appears that the *in personam* liability under the Note was discharged and enjoined under 11 U.S.C. § 524(b). Therefore, because Debtor was the only obligor, the Note is unenforceable as a remedy for collection against Debtor due to his prior chapter 7 discharge. Nevertheless, Debtor's residence remains subject to the collection of the Debt through foreclosure of any surviving lien.

The Supreme Court of South Carolina has also recognized this reasoning and has stated that "[a] note and mortgage are both securities for the payment of the debt. They are separate and distinct. Nor is a note essential to the validity of the mortgage." Ballou v. Young, 42 S.C. 170, 20 S.E. 84, 86 (1894). As put by that Court: "[T]he debt itself is something different from either the note or mortgage, which are both mere securities for and evidences of the debt, and as a consequence, the loss of the right to enforce one does not necessarily take away the right to enforce

---

[10]    The Mortgage provides that it shall be governed by federal law and the law of the jurisdiction in which the Principal Residence is located. As the Principal Residence is in South Carolina, South Carolina law would govern the Mortgage. The Note does not address the governing law; however, it appears South Carolina law governs the Note as well.

[11]    A promissory note that evidences a debt secured by a mortgage is considered a negotiable instrument and subject to article three of the South Carolina Commercial Code. See Swindler v. Swindler, 355 S.C. 245, 249–50, 584 S.E.2d 438, 440–41 (S.C. Ct. App. 2003).

[12]    It appears a similar result would be reached under the prior version of the South Carolina Commercial Code. See S.C. Code Ann. § 36-3-305(2)(d) (2003) (noting that a holder in due course would be subject to the defense of a discharge in insolvency proceedings).

the other." Id.; see also McCaughrin & Co. v. Williams, 15 S.C. 505 (1881) ("A deed of trust or mortgage is valid without any note or bond, although it purports to secure a note or bond and substantially describes it. The mortgage debt exists independently of the note. The inquiry is: Does the debt exist? If it does, it is not essential that there should be any evidence of it beyond what is furnished by the recital of the deed. The validity of a mortgage does not depend upon the description of the debt contained in the deed, nor upon the form of the indebtedness, whether it be by note or bond or otherwise; it depends rather upon the existence of the debt it is given to secure. . . .."); Platt v. Carroll, 125 S.C. 493, 119 S.E. 180 (1923) ("The bond is not the debt, nor is the mortgage the debt; the debt is borrowed money; the bond and the mortgage are simply separate securities for the same debt, and the creditor may pursue either security that his interest may dictate."). This precedent was recently reiterated by the Court of Appeals for South Carolina in Bank of America, N.A. v. Draper. See Bank of America, N.A. v. Draper, 405 S.C. 214, 220–21 746 S.E.2d 478, 481 (Ct. App. 2013) ("A mortgage and note are separate securities for the same debt . . . ."). Under this line of reasoning, the South Carolina Supreme Court has held that a mortgage may be enforced even when the note has been determined to be void or otherwise unenforceable. See Plyler v. Elliott, 19 S.C. 257 (1883) (permitting foreclosure of the mortgage when the note was void due to an improper alteration); see also Nichols v. Briggs, 18 S.C. 473 (1883) (holding that a mortgage could be enforced when the enforcement of the note was barred due to the statute of limitations).[13] In other words, under South Carolina law, the debt owed is

---

[13] The Court notes that while these opinions of the Supreme Court of South Carolina are older, these opinions remain applicable law under South Carolina and are still cited favorably by the South Carolina Supreme Court. See Lever v. Lighting Galleries, Inc., 374 S.C. 30, 647 S.E.2d 214 (2007) (relying on Nichols v Briggs and Platt v. Carroll to determine that a creditor may foreclose a mortgage after a judgment resulting from a related suit on note became stale); see also South Bay Properties, LLC, v. Bayside Property, Inc. (In re South Bay Properties, LLC), C/A no. 10-04922-8-SWH; Adv. Pro. No. 10-00236-8-SWH, slip op., 2011 WL 5902574 at p. *6 (Bankr. E.D.N.C. June 15, 2011) (describing the case law on mortgages in South Carolina in the following manner: "[o]ld and dusty as these cases may be, this court has found no more recent precedent to contradict them, and they appear to have established a lasting legal footprint").

separate from the note and mortgage, and, in circumstances where an unsatisfied note has become

unenforceable, the mortgage may stand on its own as evidence and security to enforce the debt.

Despite the chapter 7 discharge, the Debt would nevertheless remain enforceable through

the foreclosure of the Mortgage. See Ducker v. Standard Supply Co., Inc., 280 S.C. 157, 159, 311

S.E.2d 728, 730 (1984) ("A discharge of the personal liability of a debt or judgment does not affect

the lien securing that debt or judgment."). In this case, the parties agree the Debt which originated

with the Note and Mortgage on February 20, 2004 still exists and that Fannie Mae is the ultimate

beneficiary of the collection of that Debt. Therefore, to determine the proper party with standing

to file the Proof of Claim in this case, the Court must determine who has standing to prosecute an

*in rem* foreclosure action of the Mortgage under South Carolina law.

### *South Carolina Foreclosure Law*

The Court of Appeals of South Carolina's recently addressed foreclosure law and

procedure in South Carolina as it relates to servicers of a mortgage loan in Bank of America, N.A.

v. Draper, 405 S.C. 214, 746 S.E.2d 478 (Ct. App. 2013).  In Draper, the Court of Appeals of South

Carolina determined that a servicer of a loan, who is not the owner of the loan, has standing to

initiate a foreclosure "by virtue of its pecuniary interest in collecting payments under the terms of

the note and mortgage." Id. at 222, 746 S.E.2d at 482.

Ditech asserts that under the holding of Draper, it must only demonstrate that it is a servicer

to establish its standing to file the Proof of Claim in Debtor's bankruptcy case. However, central

to the holding in Draper is the underlying right of the servicer to collect payments on behalf of the

beneficial owner of the debt.  Simply asserting that you are a servicer does not demonstrate that

the servicer or alleged beneficial party has the right to collect the debt. Therefore, the Court does

not interpret Draper to eliminate the requirement of a plaintiff in a foreclosure action to

14

demonstrate that it or the party on whose part it is acting has the right to collect or otherwise enforce the debt.

As indicated in <u>Draper</u>, the following elements are necessary to bring a foreclosure action in South Carolina:

> "Generally the party seeking foreclosure has the burden of establishing the existence of the debt and the mortgagor's default on that debt. Once the debt and default have been established, the mortgagor has the burden of establishing a defense to foreclosure such as lack of consideration, payment or accord and satisfaction."

<u>Id.</u> at 220–21, 746 S.E.2d at 481 (quoting <u>U.S. Bank Trust Nat'l Ass'n v. Bell</u>, 385 S.C. 364, 374, 684 S.E.2d 199, 204 (Ct. App. 2009)). In this case, the parties do not dispute that the Debt exists, that Debtor has defaulted on the Debt,[14] and that Fannie Mae is the beneficiary of the collection of the Debt.

Therefore, the key inquiry for the Court is whether Ditech has a right to collect the Debt.

### *Transfers from Bank of America to Green Tree*

Based on the uncontradicted record, it appears that prior to 2013, Bank of America acted as the servicer for Fannie Mae, and was entitled to enforce the Debt. Specifically, Bank of America was the holder of the Mortgage due to the 2010 assignment from MERS to BAC Home Loans, as well as the holder of the discharged Note; which was subsequently lost by Bank of America's litigation counsel. As the holder of the Note when it was lost, and the holder of the Mortgage as well as the servicer for Fannie Mae, Bank of America had the right to collect the Debt from Debtor; however, the right to collect *in personam* from Debtor was discharged as part of the prior chapter 7 bankruptcy case.

---

[14]    Debtor indicated in his pleadings that he has been in default on the debt since November 2009.

15

As part of the 2013 servicer transfer between Bank of America and Ditech's predecessor, Green Tree, it appears that Bank of America transferred its rights to the Debt and Mortgage to Green Tree.

First, Bank of America transferred the Mortgage to Green Tree by an assignment dated May 16, 2013.[15] The May 16, 2013 mortgage assignment states that Bank of America "does hereby grant sell assign transfer and convey unto Green Tree . . . all beneficial interest under that certain Mortgage described below **together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage**." (emphasis added). The mortgage assignment would appear to create a clear indication that the parties intended to transfer not only the Mortgage, but also the related right to collect the underlying Debt. Second, the record reflects that Bank of America assigned, sold or transferred the right to collect payments on the Debt to Green Tree as stated in the Servicer Transfer Letter sent to Debtor on April 23, 2013. Further evidence of Bank of America's intent to transfer of the right to collect the Debt is demonstrated by the testimony of Ms. Gostebski and the Lost Note Affidavit filed by Ditech, which both stated that Bank of America transferred the right to enforce the Lost Note to Ditech. Ms. Gostebski also testified at the June 21, 2018 hearing that Ditech is the present servicer of the Debt on behalf of its owner, Fannie Mae.

For the foregoing reasons and based on the record, including but not limited to the Mortgage assignment from Bank of America to Green Tree, the Lost Note Affidavit, and the testimony presented at hearing, the Court finds there was a transfer of the right to collect the underlying Debt on behalf of Fannie Mae from Bank of America to Ditech. Further, Ditech, by

---

[15]    While there was an additional mortgage assignment executed on June 4, 2013, which purported to assign the Mortgage from MERS to Green Tree, that assignment appears to be ineffective as MERS had previously transferred and assigned its rights in the Mortgage to BAC Home Loans by the August 27, 2010 assignment of the Mortgage.

testimony of its agent indicated that it is acting on behalf of the owner of the Debt, Fannie Mae, to collect the payments on the Debt. Ditech is, by assignment, the holder of the Mortgage, as the security for the Debt that remains enforceable. The Court finds Ditech, as servicer, is a party with the rights to collect the Debt on behalf of Fannie Mae. For all of these reasons, the Court finds according to the elements set forth in <u>Draper</u>, Ditech has standing, as the servicer of the Debt on behalf of Fannie Mae, to file the Proof of Claim in this case.

In making this conclusion, the Court notes Debtor's concerns regarding the possibility of "double collection" of the same debt due to the Note being lost and past inconsistent statements made about Ditech's possession of the Note indorsed in blank.[16] However, the Note is no longer enforceable against Debtor personally. Further, the present matter is not a situation where multiple parties are alleging to be the creditor for the same debt. Ditech is the only party that has filed a Proof of Claim on the Debt, a debt that Debtor readily admits to owing. Neither Bank of America or Fannie Mae has filed a claim in addition to Ditech's Proof of Claim. Both Debtor and Ditech agree that Fannie Mae is the owner of the Debt, and therefore, would be the ultimate beneficiary of any payments made on the Debt. Therefore, while the Court finds Ditech is a proper party to file the Proof of Claim for the Mortgage Debt, as an additional measure, the Court hereby orders that Ditech administer any funds collected on the Debt during this case in trust for or for the benefit of Fannie Mae,[17] the owner of the Debt, and requires it to ensure that all payments on the Debt are

---

[16]     Debtor also asserts that Ditech deliberately misrepresented in the Proof of Claim that it was the servicer of the Debt on behalf of Fannie Mae. While some of the confusion in this matter would have been avoided if Ditech had expressly indicated in the Proof of Claim that it was acting as the servicer on behalf of Fannie Mae, it would appear that Ditech has standing to foreclose the Mortgage under <u>Draper</u>, and would be permitted to file a claim. Further, Ditech indicated at the hearing, through its representative's testimony, that it was the servicer of the Debt on behalf of Fannie Mae.  Nonetheless, to clarify the record, the Court is ordering Ditech to amend its claim or make other appropriately written filings to indicate that it is acting as servicer for Fannie Mae in this case.

[17]     To the extent the Debt is sold to another party, Ditech or any subsequent servicer shall hold the funds in trust for or for the benefit of the owner of the Debt.

properly credited by both Ditech and the owner of the Debt against the Debt that is secured by

Debtor's residence. To clarify the record, the Court also orders Ditech or any successor servicer to

amend the Proof of Claim or make other appropriate written filings to indicate that it is acting as

servicer for Fannie Mae or any successor owner of the Debt in this case.

### *Enforcement of the Lost Note*

It does not appear that the published South Carolina case law has directly addressed a

circumstance similar to the facts of the present matter where: (1) the personal liability on the note

has been discharged as a result of a prior bankruptcy, (2) the note was lost by a servicer, who was

acting on behalf of the owner of the note, and (3) the servicing of the debt was transferred to a new

servicer after the note was lost. While the South Carolina case law relied upon by this Court in this

Order, despite being older, appears to be good law, the Court will also review the enforcement of

the lost Note under the South Carolina Commercial Code to the extent it is implicated in this

matter.

Because the Note is lost, the Court must review the lost note statute under the South

Carolina Commercial Code.  Debtor asserts that S.C. Code Ann. § 36-3-804, the lost note statute

in effect when the Note was originated, is applicable to this matter.[18]

Section 36-3-804 of the South Carolina Code provides that "the owner of an instrument

which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name

---

[18]     Subsequently, the South Carolina Legislature adopted a revised version of Article 3 of the South Carolina
Commercial Code in July of 2008, which included S.C. Code Ann. § 36-3-309 and replaced § 36-3-804. However,
the July 2008 Act adopting the amendments indicated that "[a] transaction occurring before the effective date [July 1,
2008] of this act and the rights, obligations, and interests flowing from that transaction are governed by any statute or
other law amended or repealed by this act as if repeal or amendment had not occurred and may be terminated,
completed, consummated, or enforced under that statute or other law." "Transaction" is not defined in the South
Carolina Commercial Code, and it does not appear South Carolina case law has directly addressed what constitutes a
"transaction" as intended by the South Carolina Legislature. For the purposes of this Order, the Court adopts the view
of Debtor that S.C. Code Ann. § 36-3-804 is applicable to this matter.

and recover from any party liable upon due proof of his ownership, the facts which prevent his production of the instrument and its terms."[19]

In applying the requirements of that statute, the Court finds that Fannie Mae is the owner of the Debt, including ownership of the subject Note at the time of the hearing and at the time the proof of claim was filed by Ditech, its servicer. The Court also received credible and undisputed testimony that the original Note was lost when it was in the possession of the prior servicer, Bank of America, specifically, when it was in the possession of its foreclosure counsel, Korn Law Firm. After Korn Law Firm suddenly ceased operations, the original note could no longer be located. Exact copies of the original note, which included its terms, were submitted into evidence by both parties. Therefore, it would appear that Fannie Mae, as owner at the time of the hearing, would be a proper party to maintain an action to collect the lost Note according to § 36-3-804.

While § 36-3-804 requires the action to collect on a lost note be brought in the name of the owner, South Carolina law also recognizes a servicer's standing to bring an action on behalf of the owner of a debt. This Court has repeatedly held that a servicer may file a proof of claim on behalf of the owner of the debt and the Court of Appeals for South Carolina has held that a servicer has standing to pursue a foreclosure action.  See, e.g., In re McFadden, 471 B.R. 136, 176 (Bankr. D.S.C. 2012) ("A servicer is a real party in interest and has standing to move for relief from stay

---

[19]    "Owner" is not defined under the prior version of Article 3 of the South Carolina Commercial Code. That version of the South Carolina Commercial Code permitted parties other than the owner of the note to be the holder of the note for collection and enforcement of the note. See S.C. Code Ann. § 36-3-301 (2004) ("The holder of an instrument **whether or not he is the owner** may transfer or negotiate it and discharge it or enforce payment in his own name." (emphasis added)). However, under the plain reading of § 36-3-804, it is clear that the party to collect on and enforce the note after it is lost is the "owner" and not the holder of the note when it was lost. In the present matter, considering the servicing relationship between Bank of America and Fannie Mae, it would appear that Fannie Mae, as owner of the debt, was the owner of the note when it was lost, and that Bank of America was only the holder of the note for purposes of servicing the debt. Based on this determination, it would appear that while Bank of America was entitled to enforce the note as the holder prior to it becoming lost, Fannie Mae, as the owner of the note/instrument, became the party to enforce it under S.C. Code Ann. § 36-3-804 when the note was lost.

and to file proofs of claim on the owner's behalf."); Draper, 405 S.C. at 223, 746 S.E.2d at 482 ("[T]he master [in equity] correctly found the Bank [as servicer of the debt] had standing to foreclose on the mortgage.").The credible evidence before the Court established that Ditech, in asserting the proof of claim, was acting for Fannie Mae as its servicer. Further, the Court has ordered that Ditech or any successor servicer amend the claim or file other pleadings to reflect that it is acting in a representative capacity for Fannie Mae or successor owner of the Debt. [20] Therefore, because Ditech was acting on behalf of the owner, Fannie Mae, as its servicer, the Court finds the requirements of § 36-3-804 to be satisfied, and Ditech as servicer for Fannie Mae would have standing to enforce the lost Note.

### Debtor's Other Arguments for Disallowance of the Claim

Debtor also raised several other arguments that the Proof of Claim should be disallowed or the Court should grant other relief. The Court will briefly address each of these arguments.[21]

### Statute of Limitations

Debtor alleges that any claim based on the Mortgage Debt is barred by the statute of limitations under South Carolina law. Specifically, Debtor asserts that he has been in default on the Mortgage Debt since November 2009 and that any action for the default would accrue against him as of the date Ditech began servicing the Debt in April 2013. It appears Debtor is arguing that

---

[20]    The Court notes that any argument that Ditech lacks standing because the proof of claim was not initially filed in the name of "Ditech as servicer for Fannie Mae" would place form over substance. The goals of these proceedings as indicated by Debtor is to ascertain the correct mortgage creditor; which through this proceeding has been determined to be Ditech as servicer for the owner of the Debt, Fannie Mae. Amendments to a proof of claim should be freely allowed for corrections of misdescriptions and minor inaccuracies in a statement of substantially the same claim. See In re Lanman, 24 B.R. 741 (Bankr. N.D. Ill. 1982).  Further, to disallow the claim on such grounds would be detrimental to the administration of Debtor's bankruptcy case as the treatment and cure of the default on his Debt (through loss mitigation/mortgage modification) is a central purpose of the case.

[21]    In addition, Debtor in post-hearing correspondence filed on August 13, 2018, 53 days after the evidentiary hearing on the Objection, sought production of additional information related to Ditech's standing as servicer of the Debt. In light of the Court's ruling, these late requests are moot.

the three-year statute of limitations for contracts under S.C. Code Ann. § 15-3-530 applies. However, because the Debt is secured by the Mortgage, the Court finds the twenty-year statute of limitations under South Carolina law applies. See S.C. Code Ann. § 15-3-520 ("Within twenty years: (a) an action upon a bond or other contract secured by a mortgage of real property . . . ."). Therefore, as the default of the Debt occurred less than twenty years prior to the filing of Debtor's present bankruptcy case, the Court finds that the Proof of Claim is not barred by the statute of limitations.

*Failure to Produce the Original Note*

Debtor also seeks the disallowance of the Proof of Claim because Ditech failed to produce the original Note. While the production of the original note is one means of establishing standing, neither Debtor not the Court has identified authorities holding that this is a requirement to establish standing under South Carolina law. Further, the facts in this matter indicate that the Note is lost and cannot be produced, but copies of the Note were submitted into evidence by both Ditech and Debtor. Importantly, the Court has already concluded that Ditech is entitled to collect the Debt, through the Mortgage on behalf of Fannie Mae. Therefore, the Proof of Claim should not be disallowed based on Ditech's inability to produce the original Note.

*Validity of Mortgage Assignments*

Debtor also challenged the validity of the assignments of the Mortgage. Specifically, Debtor points to the fact that the 2010 assignment from MERS to BAC Home Loans was executed by BAC Home Loans' litigation counsel in its role as an Assistant Secretary of MERS. Debtor believes this is a fraudulent practice. Further, Debtor challenges the 2013 assignment from Bank of America to Green Tree because the assignment states that the original lender was MERS as

nominee for Countrywide Home Loans, Inc. Debtor asserts that Countrywide Home Loans, Inc. was the original lender.

However, this Court has found that a mortgagor, such as Debtor, does not have standing to question the validity of a mortgage assignment because the assignment of the mortgage is a separate contract to which the mortgagor is not a party. See Guy v. Carrington Mortgage Servs. (In re Guy), 552 B.R. 89, 99 (Bankr. D.S.C. 2016); In re McFadden, 471 B.R. 136, 161–62 (Bankr. D.S.C. 2012) (Duncan, J.); Montgomery v. Bank of America, 740 S.E.2d 434 (Ga. Ct. App. 2013)

Nevertheless, even if Debtor had standing to challenge the Mortgage assignments, the Court finds the Debtor's contentions lack merit.  In regards to the assignment from MERS to BAC Home Loans, the mere fact that BAC Home Loans' litigation counsel executed the assignment on behalf of MERS does not demonstrate that the assignment was fraudulent. The Court has not identified any authority that precludes an individual from being simultaneously an employee or agent of one entity and an agent of another. In addition, the execution of assignments in this fashion appears to have been the customary practice of MERS. See Jackson v. Mortg. Electronic Registration Sys., Inc., 770 N.W.2d 487 (Minn. 2009) ("MERS instructs its members to have someone on their own staff become a certified MERS officer with authority to sign on behalf of MERS.").

Debtor provided no additional authority or evidence to support the allegation that BAC Home Loans' litigation counsel did not have authority to execute the assignment or was otherwise impersonating as or misrepresenting an Assistant Secretary of MERS. In fact, Debtor's Objection pleads that: "In 2010, Mortgage Electronic Registration Systems, Inc., ("MERS"), as the nominee of Countrywide assigned the mortgage to Bank of America. Countrywide also indorsed the original note in blank to Bank of America as a bearer instrument . . . . As the holder of the note and

mortgage, Bank of America continued the foreclosure case since 2010 against the debtor as the real party in interest."  Debtor also indicates in his Memorandum filed on June 11, 2018 that the assignment from MERS to BAC Home Loans "appears to be a genuine assignment."

Therefore, the Court finds that the fact that the assignment was executed by an individual who also served as litigation counsel in the Foreclosure Action alone is not sufficient grounds to find that the assignment was fraudulent. See Pliego v. Federal Nat'l Mortg. Ass'n, C/A No. 13-2116 (JRT/JJK), slip op., 2014 WL 714477 at *1 n.2 (D. Minn. Feb. 25, 2014) ("[T]he fact that Wilford was an employee of Wilford & Geske[, foreclosure counsel for the creditor,] when he executed the assignment on behalf of MERS is perfectly consistent with this practice and does not establish a plausible basis for a claim that Wilford lacked authority to execute the assignment on behalf of MERS."); Stilp v. HSBC Bank USA, N.A., Civ. No. 12–3098 (ADM/JJK), 2013 WL 1175025, at *4 (D.Minn. Mar. 20, 2013), aff'd, 2013 WL 5340399, at *3 (8th Cir. Sept. 25, 2013) ("Plaintiffs plead upon information and belief that all individuals executing assignments of mortgage and power of attorney lack legal authority to do so. Plaintiffs believe the individuals executing assignments and POAs are employed by organizations other than the ones on whose behalf they have signed.... Even if the individuals do work for other organizations, it does not mean that they could not also work for or be hired as agents on behalf of different clients. Absent even an iota of evidence of fraud, these are conclusory allegations which do not state a claim for which relief may be granted."). Debtor has not demonstrated that the 2010 assignment from MERS to BAC Home Loans is fraudulent.

As to the assignment from Bank of America to Green Tree, Debtor asserts that the assignment is fraudulent because it states that the "Original Lender" is MERS, as nominee for Countrywide Home Loans, Inc. Under the Note and Mortgage, the Lender is listed as Countrywide

Home Loans, Inc., while MERS, as nominee for Countrywide Home Loans, Inc. is listed as the Mortgagee. Debtor contends that this discrepancy shows the assignment is fraudulent.

However, the Court finds that the assignment correctly lists the original borrower and mortgagor, the date of the Mortgage, the Original amount of the Debt, and the recording information of the Mortgage, including the book and page number and date of the recording of the Mortgage. In addition, the assignment includes the address of both Bank of America and Green Tree.

Section 30-7-50 of the South Carolina Code lists the required information for an assignment of a mortgage: "Assignment of mortgage forms shall include the name of the mortgagor and the name and address of the mortgagee and the book, page and date of recording of the original mortgage, and may include a toll free number for the assignee if such a number is available." The assignment from Bank of America to Green Tree includes all of the required information under S.C. Code Ann. § 30-7-50 to be a valid assignment.

Considering the entirety of the document, it appears the discrepancy raised by Debtor is a scrivener's error that would not affect the validity of the assignment as a reasonable person would be able to identify the mortgage being transferred by the information included in the assignment. Debtor has provided no additional evidence or authority to support his assertion that the assignment is fraudulent. Therefore, the Court does not find that the assignment is fraudulent or otherwise invalid based on the evidence presented.

*Plaintiff in the Foreclosure Action*

Debtor also asserts that Ditech does not have standing to file the Proof of Claim because Bank of America remains the plaintiff in the Foreclosure Action. In response, counsel for Ditech indicated that due to the Debtor's appeals in the Foreclosure Action and the requirements of the

automatic stay in Debtor's bankruptcy cases, Ditech has not been able to substitute itself as the plaintiff in the action. This position is supported by evidence submitted by Debtor. Specifically, Debtor submitted a copy of an Affidavit of Verified Statement of Account executed by Krista Leonard, a representative of Ditech on July 25, 2017, which was produced in the Foreclosure Action.[22] The affidavit indicates that Ditech is the "intended substitute plaintiff of BAC Home Loans" in the Foreclosure Action. Further, it appears under Rule 25(c) of the South Carolina Rules of Civil Procedure that when a transfer of interest occurs after an action has commenced, the action may be continued in the name of the original party. Therefore, the Court finds that the fact that Bank of America remains the plaintiff in the state Foreclosure Action at this time is insufficient as grounds to disallow Ditech's Proof of Claim.

*Failure to Offer Reasonable Loan Modification*

As part of his post-hearing Brief filed on August 6, 2018, Debtor also asserted that Bank of America, as the prior servicer of the Debt, failed to offer him a reasonable loan modification after he completed a trial period plan offered by it to him in 2009. Debtor requests the Court order "the successor-creditor of Bank of America to offer [Debtor] an affordable loan modification."[23]

To the extent Debtor seeks to enforce some prior loan modification offer, it appears he is seeking an affirmative equitable remedy described in Fed. R. Bankr. P. 7001(7). Therefore,

---

[22]     Debtor asserted that Krista Leonard committed a fraud on the state court because she also signed a Consent Order Granting Substitution of Attorney in the Foreclosure Action on behalf of the plaintiff, Bank of America. Beyond his mere allegations that Ms. Leonard was impersonating an employee of Bank of America, Debtor did not provide any further evidence to support this allegation or to otherwise show that Ms. Leonard lacked the authority to consent on behalf of the plaintiff in the Consent Order. Without any additional evidence or authority, the Court does not find that either the Affidavit of Verified Statement of Account or the Consent Order Granting Substitution of Attorney are fraudulent.

[23]     It appears Debtor is attempting to assert a claim similar to that raised in Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir. 2012). In Wigod, the Seventh Circuit Court of Appeals permitted a mortgagor to bring a state law breach of contract action against the servicer of a mortgage loan on the grounds that the servicer breached the trial period payment agreement when it failed to offer a permanent loan modification to the mortgagor after she completed the payments under the trial period payment agreement.

Debtor's request for relief would not be permitted in the context of a claim objection under Fed.

R. Bankr. P. 3007(b). <u>See</u> Fed. R. Bankr. P. 3007(b) ("A party in interest shall not include a demand

for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim.")

Further, while raised in a brief, Debtor did not raise his request for affirmative relief in his

originally filed Objection or other pleadings; and therefore there are concerns of adequate notice

and proper due process. Therefore, Debtor's request for affirmative relief, if any, should be made

in the filing of a separate adversary proceeding against Ditech.

In addition, it appears that Debtor's proposed chapter 13 plan currently seeks a loan

modification from the current holder of the Mortgage. To the extent Debtor seeks a new

consideration of loss mitigation/mortgage modification in his chapter 13 plan, it should be

considered at the confirmation hearing. Therefore, any request for loss mitigation/mortgage

modification as a defense to the Proof of Claim is denied.

*State Court Counterclaims*

Debtor also asserts as part of his post-hearing Brief filed on August 7, 2018 that the Court

should reconsider the state court Master in Equity's grant of summary judgment in favor of Bank

of America as to counterclaims Debtor raised in that action. The Court of Appeals of South

Carolina upheld the Master in Equity's grant of summary judgment. Specifically, Debtor asserts

the Court should award him damages based on his counterclaim regarding Bank of America's

alleged failure to comply with the "FIRREA Federal Appraisal Regulations."

However, this Court does not have authority to reconsider the orders of the Court of

Appeals and Master in Equity under the *Rooker-Feldman* doctrine and *res judicata*. "The

following requirements must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal

plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court

judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state-court judgments." Anderson v. Cordell (In re Infinity Business Group, Inc.), 497 B.R. 495, 500 (Bankr. D.S.C. 2013). In the present matter, these elements are met; therefore, the Court finds Debtor's request for relief based on his Foreclosure Action counterclaim is precluded by the *Rooker-Feldman* doctrine and denied. In addition, the elements of *res judicata* are also met in this matter as to Debtor's counterclaims from the Foreclosure Action.[24]

### *Amount of the Claim*

Because Ditech, as the servicer for Fannie Mae, has a valid claim against Debtor for the collection of the Debt and Mortgage, the Court must also determine the amount of Ditech's claim under § 502(b).

During her testimony, Ms. Gostebski, testified that the payment history attached to Ditech's Proof of Claim is an accurate description of the amounts owed on the Debt, and Ditech submitted the Proof of Claim into evidence.

Debtor does not dispute that he owes the Debt. In fact, Debtor admits that he has been in default on payments for the Debt since November 2009. In addition, Debtor has scheduled the Debt in schedule D in this case in the amount of $180,686.00.  However, Debtor disputes the inspection fees and attorney's fees and costs included in Ditech's Proof of Claim.

Ditech's Proof of Claim includes $3,080.52 of fees and costs outstanding, which is based on the payment history attached to the Proof of Claim. These fees and costs consist of $2,105.00

---

[24]  Debtor argues that the basis for the state court's grant of summary judgment against him on the counterclaims was incorrect because he subsequently amended his schedules in the Chapter 7 Case to list those claims. However, the state court's judgment is still valid, binding, and final. This Court is neither in the position nor has the authority to reconsider the state court's judgment at this time, and it appears this issue must be more appropriately raised before the state court to reconsider its prior judgment on the counterclaims.

in foreclosure attorney's fees, $75.00 from court filing costs, $225.00 in inspection fees and $675.52 in late fees. Debtor asserts that the foreclosure attorney's fees and costs are not recoverable by Ditech because it did not prosecute the state court Foreclosure Action, rather Bank of America is the plaintiff in that action.

In examining these issues, it appears that the Mortgage provides for the recovery of fees and costs associated with the protection of the creditor's interest, including legal fees and expenses. Section 9 of the Mortgage specifically provides that:

> **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) [Debtor] fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument, or to enforce laws or regulations) or (c) [Debtor] has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sum secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorney's fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. . . .
>
> Any amounts disbursed by Lender under this Section 9 shall become additional debt of [Debtor] secured by this Security Instrument.

Ditech also submitted into evidence as part of the Proof of Claim the invoices from its counsel for the Foreclosure Action. These invoices describe the date and work completed by counsel in the Foreclosure Action and show that the invoices were paid by Ditech and Green Tree. Because Debtor admits that he is in default on the Mortgage Debt, the Foreclosure Action would be an appropriate action under section 9 of the Mortgage, and the associated attorney's fees and costs would be recoverable as additional debt. Further, as the Court has already discussed, Ditech appears to be the interested party for collecting the Debt as a result of the transfer of the Debt from

Bank of America to Green Tree/Ditech. The Court does not find that Ditech's inability or delay in substituting itself as plaintiff in the Foreclosure Action would prohibit it from recovering the attorney's fees and costs owed and paid pursuant to section 9 of the Mortgage. Therefore, the Court finds that the attorney's fees and costs paid by Ditech or its predecessor related to the Foreclosure Action are recoverable and may be included in the Proof of Claim in the amount of $2,180.[25]

Debtor also disputes the $225.00 in inspection fees asserted by Ditech in the Proof of Claim. Debtor asserts that "Ditech did not state how these [inspection fees] arose." The testimony provided by Ms. Gostebski was limited about the inspection fees—namely she testified that she believes fees, like inspection fees, are recoverable under the Mortgage. No testimony or evidence was provided about what was inspected, the extent of these inspections, or how these inspections were reasonable or appropriate to protect Ditech and Fannie Mae's interest in the subject property. Based on the evidence presented, the Court finds that Ditech has not sufficiently demonstrated that the inspection fees are recoverable under the Mortgage. Therefore, the claim shall be reduced by the $225.00.

Finally, Debtor does not appear to dispute the principal balance, interest, late fees or escrow advances as part of the Debt asserted in Ditech's claim. Ms. Gostebski testified that the amounts included in the Proof of Claim are accurate as to the amounts owed on the Debt. Without sufficient evidence to the contrary, the Court finds that Ditech has met its burden by a preponderance of evidence as to the amount of these items listed in the claim.

---

[25]    Debtor also disputed certain fees listed on the payment history of the Proof of Claim, including Title Cost and Service Cost. However, a review of the payment history shows that Ditech reversed those charges on March 20, 2018 and is not attempting to recover those costs from Debtor through the Proof of Claim.

Therefore, for these reasons, the Court denies Debtor's additional requests to disallow the Proof of Claim, and finds that Ditech, as servicer for Fannie Mae, has an allowed secured claim in the amount of $173,580.30.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, the Court finds Ditech, as servicer for the owner of the Debt, Fannie Mae, holds a secured claim which is allowed in the amount of $173,580.30.  The Court further orders that Ditech, or any successor servicer, shall administer any funds paid on the Debt during the course of this bankruptcy case in trust for or for the benefit of the owner of the Debt, presently Fannie Mae, until ordered otherwise. Finally, to clarify the relationship of the parties, the Court orders that Ditech or any successor servicer amend its Proof of Claim or make other appropriate written filings to indicate that it is acting as servicer for Fannie Mae or any successor owner of the Debt in this case.

AND IT IS ORDERED.

**FILED BY THE COURT**
**01/15/2019**



John E Waites

US Bankruptcy Judge
District of South Carolina

Entered: 01/15/2019

30